UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No. 3:23-CR-00216 (KAD) |
| vs. | : | |
| NADA RADOVAN TOMANIC | : | May 23, 2025 |

GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO GOVERNMENT'S OMNIBUS MOTION *IN LIMINE* TO EXCLUDE IMPROPER EVIDENCE

The UNITED STATES OF AMERICA, by and through the undersigned attorneys, files this reply to the defendant's response to the Government's omnibus motion *in limine* to preclude the defendant from introducing certain improper evidence, and to move for opening statements by the parties. *See* Docket #98 (the "Motion"); Docket #107 (the "Response"). For the reasons set out below, the arguments the defendant makes in her Response are unavailing, and the Court should grant the Government's Motion. Additionally, the Government (1) opposes the defendant's belated motion *in limine* to preclude the testimony of the Government's expert witness, and (2) based on the defendant's *ad hominem* attacks in her Response, respectfully requests that the Court order the defendant to refrain from making similar attacks before the jury.

I.  Reply Arguments

   A.  Statute of Limitations and Due Process

The defendant's opposition to the Government's motion *in limine* regarding the statute of limitations and pre-indictment delay is unsupported and fundamentally misunderstands the nature of Government's request. *See* Docket #107, at 3–7. Following the Court's denial of the defendant's motion to dismiss on these grounds, there are no factual issues that require the jury's determination. And, contrary to the defendant's assertions, the Government does not seek to preclude any and all references to timing, but rather evidence or argument related to "any alleged

violation of the statute of limitations or preindictment delay, including questioning or arguments suggesting that the timing of the United States' indictment of the defendant – or the length of time between the alleged offense and the indictment – has any bearing on her guilt or innocence or is in any way improper or unfair." Docket 98, at 2.

*First*, the Court has now denied the defendant's motion to dismiss the Indictment on statute of limitations and pre-indictment delay grounds. *See* Docket #115 (denying Docket #85). On the statute of limitations, the Court determined, as a legal matter, that the statute of limitations began to run when the unlawful procurement of naturalization offenses were complete, *i.e.*, when the defendant procured her naturalization on June 15, 2012. *See* Docket #115 (noting that the reasons were stated on the record). The defendant has not disputed that she procured her naturalization on this date. Thus, unlike cases the defendant cites in her Response, there is no factual dispute about the relevant dates for the jury to decide. *See United States v. Pursley*, 22 F.4th 586, 593 (5th Cir. 2022) (directing the district court to make the legal determination of when the statute of limitations would run and to instruct the jury to find whether "an overt or affirmative act was committed in the proper limitations period as to each count.") (cited in Docket #107, at 6). Nor has the defendant requested any such instruction in either his original proposed jury instructions—or his two belated, supplemental proposed jury instructions, including one filed on May 20, 2025. *See* Docket #97; Docket #103; Docket #117. And "based on the present evidence such an instruction will not be necessary." *United States v. Bracy*, No. 20-CR-483 (ARR), 2022 WL 17801133, at *3 (E.D.N.Y. Dec. 19, 2022) (cited in Docket #107, at 5). While the defendant may disagree with the Court's legal determination of when the statute of limitations would run, there are other post-trial avenues available to her to address the legal issue. This is not a question for the jury.

Similarly, the defendant's "claim that preindictment delay violated her constitutional rights

2

is a matter of law for the Court, not a jury, to decide," and the Court has done so. Docket #98, at 2; *see also United States v. Scott*, 437 U.S. 82, 98 (1978) ("the dismissal of an indictment for preindictment delay represents a *legal judgment* that a defendant, although criminally culpable, may not be punished because of a supposed constitutional violation.") (emphasis added). Neither of these issues—both of which go to the Government's timing in bringing the Indictment—is relevant to the defendant's factual guilt, or appropriate for the jury's consideration.

*Second*, contrary to the defendant's assertions, the Government's motion *in limine* does *not* seek to preclude "all mentions of the timeline" or "other temporal references." Docket #107, at 4. Unlike in the *United States v. Krug* case on which the defendant relies, the Government is not seeking to preclude "all reference, direct or indirect, to the passage of" time—just those that go to the Government's timing in bringing the Indictment. No. 14-CR-102S (2)(3), 2016 WL 7045937, at *1 (W.D.N.Y. Dec. 2, 2016) (cited in Docket #107, at 5). For example, while it would be improper for the defendant to argue that the jury should consider any purported delay by the Government in bringing the case, that is entirely separate from the defendant's ability to cross-examine witnesses about matters such as how their memory of events that occurred in 1993 may be affected by the passage of time.

Indeed, other courts in this Circuit have similarly denied a defendant's motion to dismiss on statute of limitations or pre-indictment delay grounds, and still permitted the defendant to address the timeline where it is appropriately relevant, for example, in questioning witnesses about their memories over time. *See, e.g.*, *United States v. Jordan*, 629 F. Supp. 3d 49, 56 (E.D.N.Y. 2022) (denying the defendant's due process challenge for pre-indictment delay, and noting that the defendant's arguments regarding the general fallibility of witness memory were for jury to consider when deciding whether government had met its burden of proof at trial). And other

3

district courts have granted similar motions *in limine* to preclude evidence or argument related to statute of limitations and due process in naturalization fraud cases. *See, e.g.*, *United States v. Belayneh*, 672 F. Supp. 3d 1317, 1321–22 (N.D. Ga. 2023) (denying motion to dismiss on statute of limitations grounds in naturalization fraud case); *United States v. Belayneh*, No. 1:21-CR-00213-WMR-JEM, Docket #70 (N.D. Ga. June 21, 2023) (granting the Government's "Motion in Limine to Preclude Evidence or Argument Related to Statute of Limitations and Due Process").

Thus, the defendant misstates the Government's request, and her hyperbolic invocations of "show trial[s]" at the "Volksgerichtshof" of Nazi Germany are wholly inappropriate and unwarranted. Docket #107, at 7. The Government's motion *in limine* regarding the statute of limitations and due process is narrowly tailored to the facts of this case, and consistent with the jurisprudence in this and other Circuits.

### B. Jury Nullification

In her Response, the defendant takes the remarkable position that she is entitled to introduce evidence—even if it "is not otherwise admissible"—for the purpose of jury nullification, so long as defense counsel does not actually argue for jury nullification. Docket #107, at 7–8. Unsurprisingly, as addressed below, this Circuit has flatly rejected this argument in other cases. Instead, as requested in the Motion, the defendant should not be permitted to present evidence or argument that is "not relevant to [her] factual guilt and would serve no purpose other than to encourage nullification." Docket #98, at 4.

*First*, the defendant misreads the caselaw the Government cites in its Motion in ways that this Circuit has explicitly rejected. *See* Docket #107, at 7–9. Regarding the *Thomas* case (cited in Docket #98, at 3), for example, this Circuit later determined that, while that case focused on the court's responsibility to dismiss a juror who was unwilling to follow the law, "[i]n reaching that conclusion, we explained in no uncertain terms that 'trial courts have the duty to forestall or

prevent' jury nullification." *In re United States*, 945 F.3d 616, 626 (2d Cir. 2019) (quoting *United States v. Thomas*, 116 F.3d 606, 614 (2d Cir. 1997)). The *Thomas* court's "reasoning was thus not limited to the specific facts at issue," but "[i]nstead, 'tak[ing] th[e] occasion to restate some basic principles regarding the character of our jury system,' [this Circuit] 'categorically reject[ed] the idea that, in a society committed to the rule of law, jury nullification is desirable or that courts may permit it to occur when it is within their authority to prevent.'" *Id.* (quoting *Thomas*, 116 F.3d at 614). Indeed, since the *Thomas* case, this Circuit has had "no hesitation" in applying those principles "beyond the specific circumstances of that case." *Id.* (citing *United States v. Polouizzi*, 564 F.3d 142, 162–63 (2d Cir. 2009); *United States v. Carr*, 424 F.3d 213, 219–21 (2d Cir. 2005); *United States v. Pabon-Cruz*, 391 F.3d 86, 95 (2d Cir. 2004)).

In particular, the defendant ignores caselaw cited by the Government that explicitly precludes the argument that she advances in the Response. As addressed in the Motion, in *United States v. Castro*, this Circuit determined that the district court had properly precluded evidence of the defendant's prior state conviction, "finding it not relevant to the jury's consideration of the charges and expressing concern that such evidence could invite jury nullification because [the defendant] had already been convicted of charges arising from the June 18 shootings in state court." 411 Fed.Appx. 415, 420 (2d Cir. 2011) (cited in Docket #98, at 4). Applying the principles from *Thomas*, this Circuit affirmed the district court's decision to "avoid[] the possibility of nullification by precluding such evidence." *Id.*

This Circuit has also explicitly determined that "there is no difference between improperly permitting defense counsel to argue nullification and admitting evidence for the sole purpose of encouraging nullification," and that such evidence is appropriately precluded "even at

5

the pretrial stage." *In re United States*, 945 F.3d at 630.[1] "Evidence admitted solely to encourage nullification is by definition irrelevant, and thus inadmissible, regardless of what other evidence might be introduced at trial." *Id.*

Following this guidance, other courts in this Circuit have granted similar motions *in limine*. In *United States v. Perez*, for example, the district court followed this Circuit's directions in the *Thomas* and *In re United States* decisions, and granted the Government's motion *in limine*, determining that the "[d]efendant is precluded from offering evidence that has no bearing on his guilt or innocence and, unless it is relevant to the charges and its relevance outweighs the risk to the Government of prejudice and of the possibility of jury nullification, from offering evidence on his family background, health, or age or other personal facts." *United States v. Perez*, No. 23-CR-99 (LJL), 2025 WL 551567, at *4 (S.D.N.Y. Feb. 19, 2025). Similarly, in *United States v. St. Rose*, the court noted that a conviction may have consequences with respect to the defendant's immigration status, and that the defendant "is also the mother of a dependent child," but that "these factors do not bear on the Defendant's innocence or guilt." No. 11-CR-349 SJ, 2012 WL 1107659, at *1–2 (E.D.N.Y. Apr. 2, 2012). Citing the *Thomas* decision, the district court observed that the "Court takes seriously its duty to prevent the parties from encouraging jury nullification," and granted the Government's motion *in limine* "to preclude evidence or argument regarding the consequences or punishment that Defendant could face if convicted." *Id.*

Here, the defendant objects to all the categories that the Government identified as examples of types of evidence that would not be relevant to her factual guilt and would serve no

---

[1] *See also United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998) ("Because the jury enjoys no right to nullify criminal laws, and the defendant enjoys a right to neither a nullification instruction nor a nullification argument to the jury, the potential for nullification is no basis for admitting otherwise irrelevant evidence.").

6

purpose other than to encourage nullification,[2] referring to the Government's arguments as "frankly bizarre." Docket #107, at 8–9; *see also* Docket #98, at 5. Again, the Government does not seek to preclude evidence that is otherwise admissible, which may also depend on how the defendant seeks to admit it. For example, the defendant has repeatedly referred to herself in court filings as a "mother," "grandmother," and "United States citizen," with "children and grandchildren."[3] While defense counsel may properly elicit such information from the defendant as background context if she testifies, that is different from defense counsel making arguments based on this information—which has no relevance to the facts at issue in this case, and which could only be intended to encourage jury nullification.

In contrast, the defendant has also repeatedly referred to herself in court filings as a "taxpayer" with "no criminal history" in the United States,[4] who has "native born citizen

---

[2] The defendant does concede that evidence of the "high cost of imprisonment" and the fact that taxpayers pay this cost "is not otherwise admissible" for reasons other than attempted jury nullification, Docket #107, at 8, and it should accordingly be excluded.

[3] *See, e.g.*, Docket #89, at 4 ("Miss Tomanic, a United States citizen, mother, grandmother"); Docket #78, at 6 (referring to the defendant as a "United States citizen with native born citizen children and grandchildren"); *id.*, at 7 ("despite being a grandmother"); Docket #53, at 5–6 ("Miss Tomanic is a mother, grandmother" with "four children, two of whom were born in the United States."); Docket #51, at 2 ("Miss Tomanic is a grandmother").

[4] *See, e.g.*, Docket #89, at 4 (referring to the defendant as a "taxpayer" with "no record of illegal activity in the United States."); Docket #85, at 14 (referring to the defendant's "lack of a criminal record, no history of violence, her long record of being a responsible citizen of this country and her age and tranquil life situation"); Docket #78, at 6 ("Miss Tomanic, a longtime law abiding United States citizen"); *id.*, at 7 (referring to the defendant as having "no criminal record working blue collar jobs"); Docket #53, at 5–6 ("Miss Tomanic is a . . . tax paying member of our community who has never even been arrested prior to the charges brought against her in this case."); Docket #51, at 2 (referring to the defendant as having "no criminal history.").

children."[5]  Such evidence should not be admissible under any circumstance; not only is it not relevant to whether the defendant unlawfully procured her naturalization and could only be intended to encourage jury nullification, but it should also be precluded under the Government's other motions *in limine*.  Evidence that the defendant paid her taxes or has not committed other crimes would be improper evidence of good character, as addressed in Section II.C.  Similarly, introducing evidence of the citizenship of the defendant's children can only be intended to invoke the potential immigration consequences that the defendant and her family may face if she is convicted, which is also improper for the reasons set out in Section II.E.

Likewise, the defendant should not be permitted to introduce evidence about the circumstances of her arrest, which she has repeatedly falsely characterized in other filings,[6] and which is not relevant to her factual guilt.  The defendant claims in the Response that the circumstances of her arrest are relevant to her admissible post-arrest statements, relying on a decision allowed a defendant to present "specific evidence regarding the circumstances under which he made admissible post-arrest statements," such as "evidence of the duration of [the defendant's] detention and interrogation at the time he made the admissible post-arrest statements on June 21, 2009, whether [the defendant] was provided with water and food as of the time of his admissible statements, and the number of agents present in the room while [the

---

[5] Docket #78, at 6 (referring to the defendant as a "United States citizen with native born citizen children and grandchildren"); Docket #53, at 5–6 (Motion for Bill of Particulars) (stating that the defendant has "four children, two of whom were born in the United States.").

[6] *See* Docket #89, at 5 (referring to "her arrest by the paramilitary force sent to her home"); Docket #85 ("Miss Tomanic was … arrested at her home in West Virginia by a swarm of armed federal and local law enforcement officers"); Docket #78, at 7 (claiming that the Government "laid siege to her neighborhood during her arrest with a plethora of armed state and federal law enforcement officers").

8

defendant] was interrogated." *United States v. Morel*, 751 F. Supp. 2d 423, 430 (E.D.N.Y. 2010) (cited in Docket #107, at 9). Here, however, evidence concerning the defendant's arrest does not constitute such "specific evidence regarding the circumstances under which [s]he made admissible post-arrest statements." *Id.* The defendant has not filed any motions to suppress her post-arrest statements as somehow being unlawful. To the contrary, the defendant, who was not even at home at the time that law enforcement first approached her house and began to conduct a search pursuant to a search warrant, was taken into custody during an uneventful arrest once she arrived at her house. She later gave the post-arrest statements during a video-recorded interview at another location. Under these circumstances, evidence of the defendant's arrest does not bear on the circumstances under which she made the statements.

Thus, these, and the other types of evidence and argument identified in the Government's Motion, *see* Docket #98, at 4, are not relevant to the defendant's factual guilt and would serve no purpose other than to encourage nullification.

### C. Specific Instances of the Defendant's Good Conduct

In the Response, the defendant asserts that, because the Indictment alleges that she is "not a person of good moral character," "all instances of good moral character, which are normally not admissible, are admissible in this case as it is a fact alleged by the Government in the Indictment." Docket #107, at 10. However, this misinterprets the Indictment and the Rules of Evidence.

As alleged in Count Two of the Indictment, the defendant procured naturalization to which she was not entitled, in part, because she could not satisfy the requirements for naturalization, pursuant to 8 U.S.C. § 1427, because she was not a person of "good moral character"—which is based solely on the fact that she gave false testimony for the purpose of obtaining immigration benefits. Docket #1, at para. 13(a).

A person who is barred from demonstrating good moral character. *See* 8 U.S.C.

9

§ 1101(f)(6) ("No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established is, or was … (6) one who has given false testimony for the purpose of obtaining any benefits under this chapter"); *Kungys v. United States,* 485 U.S. 759, 779-82 (1988) (holding that 8 U.S.C. § 1101(f)(6) does not impose a materiality requirement for such false testimony); *United States v. Sokolov*, 814 F.2d 864, 869 (2d Cir. 1987) ("A person who gives false testimony for the purpose of obtaining [immigration] benefits is defined as not of good moral character.")*; see also Maslenjak v. United States*, 582 U.S. 335, 352 (2017) (noting that the defendant "swore that she had been honest when applying for admission as a refugee, but in fact she had not" and a jury could have determined that this "counted as false testimony for the purpose of obtaining [immigration] benefits and thus demonstrated bad moral character").  In other words, if a person provides false oral testimony in support of a naturalization application that is subsequently granted, then they do not possess good moral character at the time of their subsequent naturalization and are therefore not entitled to citizenship pursuant to § 1425(b).  *See, e.g.*, *Saleh v. Jaddou*, No. 21-CV-10240 (PKC), 2023 WL 5671149, at *5 (S.D.N.Y. Sept. 1, 2023) ("Statements made under oath during [naturalization] interview are "testimony" for the purposes of section 1101(f)(6)."); *Kaibanda v. USCIS*, 21 Civ. 5953 (JPC), 2022 WL 2195345, at *5 (S.D.N.Y. June 17, 2022) (finding applicant testified falsely by reviewing and affirming application answers under oath at naturalization interview).

Moreover, in the naturalization context, "good moral character" is further limited by a temporal requirement: it only applies up to five years before the defendant filed her application for naturalization.  *See* 8 U.S.C. § 1427(a) (requiring that "during all the periods referred to in this subsection [the applicant] has been and still is a person of good moral character," and referencing

"the five years immediately preceding the date of filing his application" and "the date of the application up to the time of admission to citizenship"). Here, the defendant applied for naturalized citizenship on or about January 24, 2012. *See* Docket #1, at para. 8. Thus, the question of whether she had "good moral character" for the purposes of naturalization, *i.e.*, here, whether she gave false testimony for the purpose of obtaining immigration benefits, would only apply to the period from January 24, 2007, to when she became a naturalized citizen on June 15, 2012. *Id.*

Accordingly, pursuant to Federal Rule of Evidence 404(a)(2)(A), the defendant may offer evidence of her pertinent character trait, which in context of a charge based on her false testimony, would be her character for truthfulness. *See United States v. Rossy*, No. 22-CR-550-02 (NSR), 2023 WL 8039500, at *6 (S.D.N.Y. Nov. 20, 2023) ("the Defendant [who was charged with falsifying records] is permitted to offer evidence as to her character for truthfulness, but not any prior good acts."). This does not, however, open the door to evidence of all of the defendant's other character traits. Nor does it allow the defendant to introduce "specific prior act evidence, or evidence that [she] did not commit bad acts on prior occasions." *United States v. Inniss*, No. 18-CR-134 (KAM), 2019 WL 6999912, at *8 (E.D.N.Y. Dec. 20, 2019) ("Defendant's argument, however, misses the mark. It is undisputed that [the defendant] may offer evidence of a pertinent character trait under Rule 404(a)(2)(A), so long as it does not take the form of specific prior act evidence, or evidence that [the defendant] did not commit bad acts on prior occasions.").

      **D.**      **Impeachment Via Investigative Reports**

Regarding impeachment through investigative reports, the defendant is again incorrect that the Government is making a "multifaceted overbroad request which would prevent counsel from even presenting a defense." Docket #107, at 12. The Government is simply requesting that the defendant comply with the Federal Rules of Evidence. Docket #98, at 5–6.

Specifically, the defendant seems to be arguing that she has a right, based on Federal Rule

11

of Evidence 613(a), to impeach witnesses on cross-examination based on the contents of notes or reports drafted by agents of the Federal Bureau of Investigation, which are not verbatim and which the witnesses have not reviewed or adopted, so long as she does not seek to introduce those notes or reports into evidence.  *See* Docket #107, at 11–12.  This is not the case.

  Pursuant to Rule 613, "[a] witness may be impeached by evidence of the witness's *own* prior statements."  *United States v. Otufale*, 740 F. Supp. 3d 233, 248 (E.D.N.Y. 2024) (emphasis in original) (citing Fed. R. Evid. 613).  "[N]otes of a *third party* regarding what a witness said," however, "are not admissible as prior statements of that witness in the absence of the witness's endorsement of those notes as his [or her] own statement."  *SEC v. Treadway*, 438 F. Supp. 2d 218, 223 (S.D.N.Y. 2006) (emphasis added).  While the notes and reports at issue here "summarize interviews with witnesses," "they are the agents' statements and not the witnesses' own statements."  *Otufale*, 740 F. Supp. 3d at 248; *see also Berkovich v. Hicks*, 922 F.2d 1018, 1025 (2d Cir. 1991) (affirming exclusion of FBI report containing summary of interview with witness for purpose of impeaching witness because "[t]he summary was not the recollection of [the witness], but was the recollection of an FBI agent"); *United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) ("[T]he written statement of [an] FBI agent was not attributable to [the interviewee].").  Other district courts in this Circuit have granted similar motions *in limine* on these grounds.  *See, e.g.*, *United States v. Romanello*, No. 22-CR-194(EK), 2023 WL 8283435, at *2 (E.D.N.Y. Nov. 27, 2023) (granting "The Government's Motion to Preclude the Use of Agent Reports of Witness Interviews, Rather Than the Witness's Own Statements, to Impeach" because "[a] witness may only be impeached by his or her own statements, *see* Fed. R. Evid. 613(b), not notes made by other parties about what they said, unless the witness has adopted or approved those notes.").

However, while the defendant should not be permitted to use the contents of these reports and notes to impeach the fact witnesses, the Government does not seek to preclude the defendant from calling the agents who drafted these materials to testify or, if appropriate, using their contents to impeach the agents. *See, e.g.*, *Otufale*, 740 F. Supp. 3d at 248 ("the Court grants the Government's motion to preclude Otufale and Lazarre from using the content of these reports to impeach the subject witnesses; however, Otufale and Lazarre may use these reports to impeach the agents who wrote the reports should those agents testify.").

### E. Penalties and Collateral Consequences of Conviction

In the Response, the defendant seems to take the extraordinary position that, because she is charged with naturalization fraud, she is entitled to offer arguments or evidence to the jury about the potential penalties she faces upon conviction related to her "citizenship and deportation,"[7] arguing that the Government's motion *in limine* to the contrary "comes from an arrogance that simply cannot be pierced by sarcasm." Docket #107, at 12. She does not cite a single case to support an immigration offense-related exception to the well-established principle that "juries are not to consider the consequences of their verdicts," including immigration consequences. *Shannon v. United States*, 512 U.S. 573, 579 (1994); *see also United States v. St. Rose*, No. 11-CR-349 SJ, 2012 WL 1107659, at *1–2 (E.D.N.Y. Apr. 2, 2012) (precluding the defendant from arguing for acquittal out of sympathy for defendant's immigration status).

To the contrary, district courts have repeatedly granted motions *in limine* in other

---

[7] *See also* Docket #107, at 2 ("The Government has brought a case alleging wrongful procurement of citizenship, which common sense will tell anyone means you obtained citizenship illegally and yet they do not want the logical consequences of that fact even mentioned by Defense Counsel."); *id.*, at 3 ("The Government claims that even the mention of immigration consequences by Defense Counsel is unfair to them when this is an immigration case").

13

naturalization fraud cases to preclude evidence or argument regarding the potential punishment or immigration consequences that the defendant and/or her family may face if the defendant is convicted. *See, e.g.*, *United States v. Belayneh*, No. 1:21-CR-00213-WMR-JEM, Docket #70 (N.D. Ga. June 21, 2023) (in naturalization fraud case under 18 U.S.C. § 1425(a) and (b), granting the Government's "Motion in Limine to Preclude Evidence of Criminal Penalties and Collateral Consequences of Conviction"); *United States v. Vongphakdy*, No. 321CR00184KDBDSC, 2022 WL 1274416, at *1 (W.D.N.C. Apr. 28, 2022) (in naturalization fraud case under 18 U.S.C. § 1425(a), granting the Government's motion *in limine* to preclude the defendant from admitting evidence of and making argument about the potential consequences or penalties upon conviction); *United States v. Ngombwa*, No. 14-CR-123-LRR, 2016 WL 111434, at *12 (N.D. Iowa Jan. 10, 2016) (in naturalization fraud case under 18 U.S.C. § 1425(a) and (b), granting the Government's motion *in limine* "to the extent it requests that the court exclude evidence regarding potential punishment or immigration consequences that he or his family may face if Defendant is convicted."); *United States v. Odeh*, No. 13-CR-20772, 2014 WL 4374412, at *2 (E.D. Mich. Sept. 3, 2014) (in naturalization fraud case under 18 U.S.C. § 1425(a), granting the Government's motion *in limine* and ordering that "Defendant is precluded from offering testimony, evidence or argument relating to the consequences of conviction, including the potential term of imprisonment . . . as well as the consequences set forth in 8 U.S.C. § 1451(e) requiring that this Court 'revoke, set aside and declare void' Defendant's naturalization upon her conviction.").

### F.    Opening Statements

The Government stands on its arguments in the Motion in support of its request for opening statements, based on the nature of this case and the complexity of the issues presented. *See* Docket #98, at 8–10.

## II. Opposition to the Defendant's Untimely Motion *in Limine* Regarding the Government's Expert Witness

At the end of the Response, the defendant adds an untimely motion *in limine* objecting to the Government's proposed historical expert on the Bosnian War, Dorothea Hanson. *See* Docket #107, at 15–18. The defendant does not raise any concerns about Ms. Hanson's qualifications. *See* Exhibit 1 (Hanson CV). Indeed, Ms. Hanson is imminently qualified, having worked at the International Criminal Tribunal for the former Yugoslavia ("ICTY") from 1999 to 2022, first as a research officer and then as a criminal analyst. *See* Exhibit 1. She also holds an MA and MPhil in Modern Balkan History from Yale University, an MA in East European Area Studies from the University of Washington, and a BA in Russian and Soviet Studies from Harvard University, and she was a Fulbright Scholar in Serbia, where her dissertation was in the Military-Historical Institute of the Yugoslav People's Army. *Id.*

Nor does he object to the scope or substance of Ms. Hanson's proposed testimony. As detailed in a summary and an expert report that the Government provided to the defendant, Ms. Hanson's expected testimony will assist the jury by orienting them to Bosnia and the context of the Bosnian War, and she will also testify about Bosnian forces located on Mt. Igman, including the Zulfikar Unit. *See* Exhibit 2 (Hanson Disclosure); Exhibit 3 (Hanson Expert Report).

Instead, the defendant's objection is based solely on Ms. Hanson's testimony in a different case nearly a decade ago, which defense counsel asserts "in my view, almost resulted in a mistrial," and which he claims justifies requiring the Court to "conduct a full walk through of her testimony outside the presence of jury" to "ensure she follows any Court Orders." Docket

#107, at 15–17.[8]  This is entirely unwarranted.  Ms. Hanson is a distinguished professional who has testified in multiple trials in U.S. district courts, at the ICTY, and in Bosnian State Court.  *See* Exhibit 4 (Hanson Prior Testimony).  Following her recent retirement from her position as a criminal analyst at the ICTY, Ms. Hanson has testified at three trials in U.S. district courts in the past two years—well after the 2016 case that the defendant flags here—and about which the defendant raises no complaints.  *See* Exhibit 1; Exhibit 4.  In the most recent case, *United States v. Miljkovic*, the defense raised a similar objection based on the same transcripts from the 2016 case.  However, the court permitted Ms. Hanson to testify without any prior voir dire, and her testimony did not draw any objections.

      Moreover, since the defendant has not raised any objections to Ms. Hanson's qualifications or to the scope and substance of her expected testimony based on her expert report, it would be a waste of judicial resources for the Court to "conduct a full walk through of her testimony outside of the presence of the jury."  Docket #107, at 16.  The Government fully intends to comply with the Rules of Evidence in eliciting testimony from Ms. Hanson at trial, and will instruct her to comply with any directions from the Court.  *See* Docket #108, at 1-2 ("As it does in all other cases before this Court, the Government fully intends to comply with the Rules of Evidence and expects the defendant to do the same.").  The defendant has not filed any motions *in limine* that would justify any further instructions.

### III. Motion *in Limine* to Preclude the Defendant from Making *Ad Hominem* Attacks Unrelated to This Case at Trial.

      Finally, in the Response, the defendant made a series of *ad hominem* attacks against the

---

[8] *See also* Docket #107, at 16 (arguing that the Court should rule on that "she not testify inappropriately"); *id.*, at 16–17 (referring to her "past performance on the stand in federal court.").

16

Government about matters outside the bounds of this case.[9]  Such "*ad hominem* attacks [are] not relevant or helpful to the court's" resolution of these legal issues, and the Government accordingly does not respond to those attacks here.  *Bauer v. Yellen*, 375 F. App'x 154, 156 (2d Cir. 2010) (Summary Order) (vacating the district court's order awarding attorney fees and remanding "for the court to reduce the total fee by deleting amounts incurred in mounting *ad hominem attacks*.").

However, such *ad hominem* attacks would also be improper at trial.  The Supreme Court has recognized that, just as "[a] personal attack by the prosecutor on defense counsel is improper," "the duty to abstain from such attacks is obviously reciprocal."  *United States v. Young*, 470 U.S. 1, 10 (1985) (quoting ABA Standards for Criminal Justice 4–7.8, p. 4•99).  "It is clear that counsel on both sides of the table share a duty to confine arguments to the jury within proper bounds," and "[d]efense counsel, like the prosecutor, must refrain from interjecting personal beliefs into the presentation of his case" and "must not be permitted to make unfounded and inflammatory attacks on the opposing advocate."  *United States v. Young*, 470 U.S. 1, 8–9; *see also Sacher v. United States,* 343 U.S. 1, 8 (1952) (Just as the conduct of prosecutors is circumscribed, "[t]he interests of society in the preservation of courtroom control by the judges are no more to be frustrated through unchecked improprieties by defenders.").

---

[9] *See, e.g.*, Docket #107, at 1 (arguing that "the Government's motion filed by counsel with the Attorney General's office in Washington, D.C. shows they still think their wisdom is subject to the Jesuitical rubric of 'no questions asked.'"); *id.*, at 1 (referring to the Government's "far from perfect track record for fair dealing"); *id.*, at 4 ("Perhaps this was an issue in one of the AAG's other trials around the country"); *id.*, at 15, n. 7 ("Even more troubling is that this request is coming from the office of the Attorney General of the United States which one would expect would have a better understanding of the purposes of a trial.").  *See also* Docket #106, at 4 ("Maybe that is not important in Washington, D.C., but it is important to the people for whom they work.").

Accordingly, the Government respectfully requests that the Court order the defense counsel not to make similar *ad hominem* attacks unrelated to the facts of this case before the jury.

## IV. Conclusion

The Government respectfully requests that the Court grant each of its motions *in limine* in its Motion, and this reply filing.

Respectfully submitted,

**DAVID X. SULLIVAN**
UNITED STATES ATTORNEY

/s/ *Angel M. Krull*
ANGEL M. KRULL
Assistant United States Attorney
Federal Bar No. phv11042
157 Church Street, 25th Floor
New Haven, CT 06510
(203) 821-3821

**MATTHEW R. GALEOTTI**
Head of the Criminal Division

/s/ *Elizabeth Nielsen*
ELIZABETH NIELSEN
Trial Attorney
Federal Bar No. phv20588
Human Rights and Special Prosecutions Section
1301 New York Ave NW, Suite 1200
Washington, D.C. 20530
(202) 616-4604

### CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ *Elizabeth Nielsen*
ELIZABETH NIELSEN
TRIAL ATTORNEY
